# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2509

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN BEARD,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 02–CR–30040—**Jeanne E. Scott**, *Judge.*

_____

ARGUED DECEMBER 16, 2003—DECIDED JANUARY 12, 2004

_____

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* John Beard appeals from his conviction, after a jury trial, for carrying a gun during and in relation to a drug offense, in violation of 18 U.S.C. § 924(c)(1)(A), on the ground that no reasonable jury could have found him guilty beyond a reasonable doubt, so thin was the evidence, which, construed as favorably to the government as the record permits (as we are required to do), is as follows. Acting on an informant's tip, police staked out a parking lot. They watched as two cars parked next to one another. Beard got out of the passenger side of one of them, entered the other car, remained there for a few minutes, and then returned to his car. Both cars drove off. Both were stopped by the police. In the other car they found the cash,

and in the car in which Beard was the passenger, and which they searched with his consent and that of the driver, they found the drugs in a secret compartment behind the rear seat and a loaded derringer in the closed center console of the front seat, hidden under some papers. Neither Beard nor the driver owned the car, but Beard had borrowed it eight months earlier from its owner and had been seen driving it from time to time. He was not the only person who used the car during this period, however, and the papers that were hiding it seem not to have belonged or pertained to him or the person who was driving when the gun was found by the police.

It is reasonably clear that if the gun was Beard's, it was being carried during and in relation to the drug offense. *Muscarello v. United States*, 524 U.S. 125, 126-27 (1998); *United States v. Mancillas*, 183 F.3d 682 (7th Cir. 1999); *United States v. Haynes*, 179 F.3d 1045, 1047 (7th Cir. 1999); *Young v. United States,* 124 F.3d 794, 800 (7th Cir. 1997); *United States v. Mitchell*, 104 F.3d 649, 654 (4th Cir. 1997). As we said in *Haynes*, "drug dealers do not bring guns to a deal unless they wish to instill fear in their business associates or they feel the need for protection." 179 F.3d at 1047. The difficult question is whether the gun was his. The government's lawyer acknowledged at argument that the jury could reasonably have acquitted Beard, and indeed the jury at his first trial hung. But bearing in mind that the standard for us is not whether we think he was guilty beyond a reasonable doubt but whether a reasonable jury could have found that he was guilty beyond a reasonable doubt, *United States v. Powell*, 469 U.S. 57, 67 (1984); *United States v. Morris*, 349 F.3d 1009, 1013 (7th Cir. 2003); *United States v. Capozzi,* 347 F.3d 327, 337 (1st Cir. 2003), we must affirm.

No one supposes that the derringer was the property of the car's owner—that she hid a loaded gun in the center

console when she lent Beard the car. Since others besides himself used the car during the eight months that he possessed it, conceivably the gun was left there by one of these users, but it is highly unlikely. It would mean that someone who borrowed the car from Beard placed a loaded gun in the console, covered it with papers to conceal it, and then—what? Forgot about it? That is possible, but it was not so lively a possibility as to compel a reasonable jury to acquit Beard.

We asked his lawyer at argument what the explanation of the defense was for the presence of the gun in the car that Beard had borrowed. No answer was forthcoming. The lawyer seems to have thought that since the government had the burden of proof and Beard was privileged not to testify (and he did not testify), it was irrelevant that the jury was given no alternative to the government's straightforward theory as to whose gun it was. That is incorrect. "[T]he plausibility of an explanation depends on the plausibility of the alternative explanations." *Spitz v. Commissioner*, 954 F.2d 1382, 1384 (7th Cir. 1992). And so, "realistically, a jury called upon to decide guilt must compare the prosecution's version of the incident giving rise to the case with the defense version." *Sandoval v. Acevedo*, 996 F.2d 145, 150 (7th Cir. 1993); see Ronald J. Allen, "Factual Ambiguity and a Theory of Evidence, 88 *Nw. L. Rev.* 604, 611 (1994); Allen, "The Nature of Juridical Proof," 13 *Cardozo L. Rev.* 373, 409-40 (1991); Allen, "A Reconceptualization of Civil Trials," 66 *B.U.L. Rev.* 401 (1986). Confidence in a proposition, such as Beard's guilt, is created by excluding alternatives and undermined by presenting plausible alternatives. See *United States v. Tucker*, 716 F.2d 576, 580 (9th Cir. 1983); *United States v. Reyes*, 302 F.3d 48, 56 (2d Cir. 2002).

That is why the duty of a criminal defendant's lawyer to investigate is not satisfied just by looking for ways of pok-

ing holes in the government's case. There must also be a reasonable search for evidence that would support an alternative theory of the case. *Harris v. Reed,* 894 F.2d 871, 878-79 (7th Cir. 1990); *Moore v. Johnson*, 194 F.3d 586, 611 (5th Cir. 1999); *United States v. Tucker*, 716 F.2d 576, 580 (9th Cir. 1983). Evidently the search by Beard's lawyer turned up nothing. This left the jury with no alternative theory to the government's. Relative to the alternatives, the government's case was more powerful than it would have seemed in the abstract.

AFFIRMED.

A true Copy:

     Teste:

              _____

              *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*